<u>NOT FOR PUBLICATION</u>

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| KHASANOV FAAT FATKHIBOYANOVICH AND KHASANOVA ZALIA SHARIFOVNA, et al., | : : : : | |
| Plaintiffs, | : : | Civil Action No. 04-4333 |
| v. | : : | |
| HONEYWELL INTERNATIONAL INC., et al., | : : | **AMENDED OPINION** |
| Defendants._____ | : : | |

**Appearances:**

    Mark Cimino, Esq.
    1045 Cooper Street
    Deptford, NJ 08096
        Attorney for Plaintiffs

    John R. Altieri, Esq.
    25 East Salem Street
    P.O. Box 279
    Hackensack, New Jersey 07602-0279
        Attorney for Defendants
        Thales Avionics, Inc. and Thales North America, Inc.

    Stephen R. Stegich, Esq.
    Edward G. Petraglia, Esq.
    Condon & Forsyth LLP
    7 Times Square Tower
    New York, New York 10036
        Attorney for Defendants
        Thales Avionics, Inc. and Thales North America, Inc.

**RODRIGUEZ, SENIOR DISTRICT JUDGE:**

    This matter has come before the Court on Defendants Thales Avionics, Inc.'s and Thales North America, Inc.'s (collectively "Thales") Motion to Dismiss for <u>Forum Non Conveniens</u>.

Defendants Honeywell International, Inc., Honeywell TCAS, Inc., L-3 Communications Corp., and Aviation Communications and Surveillance Systems joined Thales's Motion to Dismiss. For the reasons discussed herein, Defendants' Motion to Dismiss is granted.

## PROCEDURAL HISTORY AND FACTUAL BACKGROUND

Plaintiffs filed a Complaint on July 1, 2004 in the Superior Court of New Jersey against the above-named Defendants, alleging, <u>inter</u> <u>alia</u>, that Defendants failed to warn, train and/or provide users of its traffic collision avoidance system[1] ("TCAS") of the proper method for resolving conflicting TCAS and air traffic controller commands. (Complaint ¶29.) The action was subsequently removed to this Court by Defendant L-3 Communications Corporation ("L-3") on September 2, 2004.

On July 1, 2002, a Bashkirian Airways ("BA") aircraft with sixty-nine passengers and crew members aboard departed Moscow's Domodedovo airport on a charter flight to Barcelona, Spain. (Complaint ¶21.) That same evening, a DHL cargo aircraft departed Bergamo, Italy on a flight bound for Brussels, Belgium. (Complaint ¶22.) At 21:29:50, both aircraft were simultaneously alerted by their respective airborne TCAS that the two planes were flying at the same altitude on intersecting flight paths. (Complaint ¶23.) The airborne TCAS instructed the crew of the BA aircraft to "climb" and instructed the crew of the DHL aircraft to "descend." (Complaint ¶¶24, 25.) However, air traffic controllers instructed the crew of the BA aircraft to "expedite descent." (Complaint ¶24.) Faced with conflicting information, the crew of the BA

---

[1] TCAS is an "independent, onboard collision avoidance system designed to assist flightcrews in avoiding midair collisions." (Pl. Opp., Ex. B, § 1.2.) When TCAS detects that two aircraft have intersecting flight paths, "the system provides guidance for the optimum vertical avoidance maneuver." <u>Id.</u>

aircraft descended.  As a result, the BA aircraft and the DHL aircraft collided in-flight, killing all onboard.

## DISCUSSION

Thales argues that the Plaintiffs' action should be dismissed under the doctrine of <u>forum non conveniens</u>.  In order to succeed, Thales must satisfy a two-part test.  As a threshold matter, Thales "must establish . . . that an adequate alternative forum exists as to all defendants." <u>Lacey v. Cessna Aircraft Co.</u>, 932 F.2d 170, 180 (3d Cir. 1991) ("Lacey II").  Then, Thales "must . . . show that the private and public interest factors weigh heavily in favor of dismissal." <u>Id.</u>  However, the doctrine of <u>forum non conveniens</u> is to be "sparingly applied, inasmuch as its application results in the dismissal of a case over which the Court has jurisdiction and would ordinarily have a duty to resolve." <u>Gulf Oil Corp. v. Gilbert</u>, 330 U.S. 501, 508 (1947).

**A.  Existence of Adequate Alternative Forum**

An alternative forum is usually deemed to be adequate "when the defendant is 'amenable to process' in the other jurisdiction." <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 254 n.22 (1981).  However, an otherwise adequate alternative forum may be inadequate if it offers "a clearly unsatisfactory remedy." <u>Lacey II</u>, 932 F.2d at 180.  An unsatisfactory remedy may arise "when the subject matter of the suit is not cognizable in the alternative forum." <u>Piper</u>, 454 U.S. at 254 n.22.

In this case, Thales has agreed to condition dismissal on its voluntary submission to the jurisdiction of the Court of First Instance in Barcelona, Spain.  (Def. Br., p. 25.)  Moreover, Thales has agreed to waive any statute of limitations defense.[2]  <u>Id.</u>  Plaintiffs do not

---

[2]  Plaintiffs argue that "[a]lthough the limitations defense may be waived, **no defendant has agreed to waive it.**"  (Pl. Opp., p. 17) (further citation omitted) (emphasis in original).  However, Thales agreed in its brief that it would not pursue a limitations defense, <u>see</u> Def. Br., p. 25, and it also incorporated that provision in its Proposed Form of Order.  Therefore, Plaintiffs'

dispute that there is a cognizable claim in the Court of First Instance in Barcelona, Spain. In fact, the Plaintiffs currently maintain an action in that court against different defendants based on the circumstances that give rise to this action. Therefore, the Court finds that Thales has met its burden to prove that there is an adequate alternative forum.

**B. Amount of Deference Due Plaintiff's Choice of Forum**

The Supreme Court has held that "although 'there is ordinarily a strong presumption in favor of plaintiff's choice of forum, . . . that . . . presumption applies with less force when the plaintiff or real parties in interest are foreign.'" Lacey II, 932 F.2d at 178 (citing Piper, 454 U.S. at 255). When reviewing a motion to dismiss on forum non conveniens grounds

> the district court must indicate the amount of deference it is giving to plaintiff's choice. Where a foreign plaintiff has made a strong showing of convenience, we hold that the district court must indicate how far that showing goes toward putting the foreign plaintiff on the same footing as a domestic plaintiff.

Lony v. E.I. DuPont de Nemours & Co., 886 F.2d 628, 634 (3d Cir. 1989). However, the Third Circuit does not require the district court to identify with exact precision the amount of deference given to plaintiff's choice of forum. Lacey II, 932 F.2d at 179. In Lacey II, the Third Circuit held that the district court accorded proper weight to plaintiff's choice of forum by stating that "because plaintiff is forced to choose between two inconvenient fora, his choice is due 'at least some weight . . . and we will . . . hold defendants to establishing a strong preponderance in favor of dismissal.'" Id.

Here, Thales argues that Plaintiff's choice of forum should be accorded minimal deference because this case does not involve the balance between two inconvenient fora. Thales argument is without merit.

4

submits that Spain is more convenient because Spain has jurisdiction over both Thales, by consent upon dismissal, and BA, under Article 28 of the Warsaw Convention. (Def. Br., p. 27.)

Plaintiff, relying on Bhatnagar v. Surrendra Overseas Ltd., 52 F.3d 1220, 1226 n.4 (3d Cir. 1995), argues that even a foreign plaintiff's choice of forum is "entitled to considerable deference." (Pl. Opp., p. 18.) However, in Bhatnagar, the Third Circuit confirmed that a foreign plaintiff's choice of forum is entitled to less deference than that of a plaintiff who resides in the forum. 52 F.3d at 1226 n.4. Bhatnagar is not of use to the Plaintiffs because unlike the plaintiff there, who was faced with the choice of two inconvenient fora, the Plaintiffs here have already chosen to litigate their claims against certain defendants in Spain.

While the Court is mindful that a plaintiff's choice of forum should be accorded great weight, a foreign plaintiff's choice of forum is entitled to less deference absent a "strong showing of convenience." Lacey II, 932 F.2d at 179 (emphasis added). Because some evidence crucial to Plaintiffs' claim is likely to be found in the United States, this Court concludes that Plaintiffs' choice of forum should be accorded a small amount of deference, although not nearly the level of deference owed to a domestic plaintiff defending a motion to dismiss for forum non conveniens.

**C. Private Interest Factors**

The Supreme Court has enumerated a list of private and public interest factors to guide the district courts forum non conveniens analysis. The private interest factors include, but are not limited to, relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling witnesses; cost of obtaining attendance of willing witnesses; and possibility of view of premises. Gulf Oil, 330 U.S. at 508.

**1. Relative ease of access to sources of proof**

"In examining the relative ease of access to sources of proof . . . the district court must scrutinize the 'substance of the dispute between the parties to evaluate what proof is required,

5

and determine whether the pieces of evidence cited by the parties are critical, or even relevant to, the plaintiff's cause of action and to any potential defenses to the action.'" Lacey v. Cessna Aircraft Co., 862 F.2d 38, 46 (3d Cir. 1988) ("Lacey I") (quoting Van Cauwenberge v. Biard, 486 U.S. 517, 528 (1988)).  While it may be true that evidence relating to the design process of an operator's manual exists in the United States, "evidence of [a] defendant['s] negligence constitutes only one element of the case plaintiffs must present to sustain their burden of proof.  Plaintiffs will also need to establish proof of causation, product identification, injury, and damages." Doe v. Hyland Therapeutics Div., 807 F. Supp. 1117, 1125 (S.D.N.Y. 1992).  It is likely that this evidence "might not be easily accessible by the party seeking dismissal." Miller v. Boston Scientific Corp., 380 F. Supp. 2d 443, 451-52 (D.N.J. 2005).

The sources of proof needed by the Plaintiffs to prove their case and by Thales to prove its defenses are located in both the United States and Europe.  Thales argues that Plaintiffs have access to all of the necessary evidence that is currently located in Spain, Russia, and the United States.  (Def. Br., p. 29.)  First, Thales maintains that evidence relating to European aviation regulations, including instructions regarding right of way and resolving conflicts with TCAS is in Europe, and that as a member of the European Union ("EU"), Spain will be able to compel the production of other EU countries.  Id.  Second, Thales maintains that as a condition of dismissal, it will make relevant evidence available to Plaintiffs in Spain.  Id.  Third, Thales distinguishes this case from one where the parties have already engaged in significant discovery in the United States.  Id. at 29-30.  Finally, Thales contends that only a small part of the necessary evidence is actually available in the United States.  Id. at 30.

Plaintiffs argue that the true focus of this case is whether Thales "fail[ed] to clearly and unambiguously instruct pilots and operators to follow the TCAS commands when faced with

6

conflicting ground-based air traffic control instructions." (Pl. Opp., p. 21.) Plaintiffs maintain that to the extent evidence relating to the European aviation regulations is necessary, the information is before the Court by way of the German Federal Bureau of Aircraft Accidents Investigation ("BFU") report. Id. at 19. Plaintiffs concede that an issue exists regarding the conduct of the employees at the Zurich Air Control Center ("ACC"), but argue the operations of the Zurich ACC are set forth fully in the BFA report. Plaintiffs further note that this Court should take judicial notice that the lone air traffic controller on duty when the aircrafts collided subsequently was murdered. Id. at 21. Finally, Plaintiffs contend that the ambiguities in Thales TCAS 2000 Pilots Guide, which is available "here in the United States, in English, and [is] before this Court," were the cause of the accident. Id. at 23.

Thales responds that the evidence in Spain is directly related to its ability to prove a gap in the chain of causation. (Def. Reply, p. 16.) Thales argues that evidence of BA's TCAS training program for flight crews is available in Spain because the proceedings against that airline have already commenced. Id.

Any evidence of the design, development, marketing, packaging, and technical support documents relating to the TCAS 2000/TCAS II Traffic Collision Avoidance System Pilot's Guide will be produced by the Defendants in any action before a Spanish court. (Def. Br., p. 29.) Moreover, the Spanish court may compel discovery of necessary documents within the Defendant's control. See Tomás Fernández-Quirós Tuñón and Alejandro Ferreres Comella Decl. ¶ 31.[3]

---

[3]Plaintiffs argue that there is no discovery available in Spain. (Pl. Opp., p. 28.) However, paragraph 31 of the declaration of Tomás Fernández-Quirós Tuñón and Alejandro Ferreres Comella states that "Spain, like most European Union countries, does not provide for 'U.S. style'

The Court finds that evidence outside the United States is more easily accessible in Spain, where related proceedings have already begun, because the evidence necessary for Plaintiffs to prosecute their case is presently assembled.  The evidence of damages for Plaintiff's decedents, approximately thirty, is all located in Russia (and Spain by way of Plaintiffs' corollary action against BA).  (Def. Reply, p. 19.)  See In re Air Crash over Taiwan Straits, 331 F. Supp. 2d 1176, 1196 (C.D.Cal.2004) ("While the parties dispute the location of the relevant liability proof, there is no question that damages proof is overwhelmingly located in Taiwan.  Given the number of decedents, the volume of this evidence is substantial.").  Moreover, in order for Thales to defend Plaintiff's action based on a theory of lack of causation, it must be able to access the very same evidence available in Spain.  In addition, this case differs from both Lacey, 932 F.2d at 183-84, and Lony, 886 F.2d at 630, because unlike the defendants in those cases, who had sold their respective businesses, Thales remains in control of the documentation associated with the development and manufacture of the TCAS Pilot's Manual.  Therefore, the Court finds that this factor weighs in favor of dismissal.

**2. Availability of compulsory process for attendance of unwilling witnesses and cost of obtaining attendance of willing witnesses**

Thales argues that the majority of witnesses will be those who are knowledgeable about European aviation, and therefore, located in Europe. (Def. Br., p. 30.)  Thales also argues that to the extent that witnesses in its employ are required, they will be produced. (Def. Br., p. 30; Def.

---

discovery, but nevertheless there are procedures for compelling disclosure of documents.  Upon motion, the Court may order the non-moving party to disclose certain documents and can make an adverse inference if such documents are not produced." (Emphasis added.)  Therefore, the Spanish courts can compel a party to produce discovery.  In addition, as a condition of this Court's dismissal, Thales agree to turn over any necessary documents to Plaintiffs.  (Def. Br., p. 29.)

Reply, p. 18.) Moreover, it should be noted that Plaintiffs have already instituted an action in Spain against BA placing some of the necessary witnesses before the Spanish Court of First Instance No. 41. (Pl. Opp., p. 2.) Plaintiffs argue that the liability witnesses are located in the United States. In addition, Plaintiffs argue that any witnesses not in the United States are either subject to compulsory process or the Hague Protocol. (Pl. Opp., p. 26.) Many of the witnesses proposed by Plaintiffs will be required to travel whether the forum is New Jersey or Spain.[4] Therefore, this factor weighs in favor of dismissal because there are a number of witnesses that will likely be in Europe, corollary proceedings are taking place in Europe, and Thales agrees to make witnesses located in the United States available in Europe.

### 3. Possibility of view of premises

Thales suggests that it will be easier to view Zurich's ACC and BA's training facility should the trial be conducted in Spain. Plaintiff argues that the site of the crash, the Zurich ACC and the training facility at BA, are immaterial as far as a view of premises is concerned. The Court agrees with Plaintiff that the view of the premises factor is at best neutral.

### 4. Other factors

#### a. Translation

Thales argues that translation of documents into both English and Spanish is wasteful and can be avoided by translating the documents into Spanish for use in a single trial. (Def. Br., p. 32.) Plaintiffs argue that the documents are available in English already, citing the BFA report as an example. Moreover, Plaintiffs note that Russian translators are easily found in the United

---

[4]Plaintiffs propose that it will be necessary to call witnesses from Arizona, Washington, D.C. and New Jersey regarding the design, manufacture, preparation and revision of the TCAS manual. (Pl. Opp., p. 25.)

9

States. Because some of the documents are translated to English and interpreters are easily found in the United States, the Court finds that this factor is neutral.

### b. Miscellaneous–judgments, impleader, and safety

Thales argues that the judgments factor favors dismissal because they agree, as a condition of dismissal, that they will honor any final judgment entered by the courts of Spain.[5] (Def. Br., p. 32.) Thales also notes that impleader and safety are neutral because they have no plans to implead additional parties and safety does not appear to be an issue. Id. at 32-33. Plaintiffs do not challenge any of these propositions specifically. The Court finds that the miscellaneous factors are neutral.

### D. Public Interest Factors

The public interest factors include, but are not limited to, administrative difficulties (congestion of the Court); jury burdens; local interest in the controversy; and familiarity with the governing law. Gulf Oil, 330 U.S. at 508.

### 1. Administrative difficulties (congestion of the Court)

Thales argues that this factor "overwhelmingly" supports dismissal because a related action is already pending before the Spanish courts. (Def. Opp., p. 34.) Plaintiffs do not discuss this factor specifically in their brief. It is impossible for this Court to determine whether the parties will enjoy speedier resolution in Spain than in the United States on the information provided; however, because the litigation in Spain has already begun, it is unlikely that the resolution of Plaintiffs' claims would be less speedy in the alternative forum. Therefore, while not given tremendous weight, this factor does favor dismissal.

---

[5] Thales also notes that this is a right guaranteed by N.J. Stat. Ann. § 2A:49A-16 et seq.

### 2. Jury burdens

Specifically, the Supreme Court has stated that "[j]ury duty is a burden that ought not to be imposed upon the people of a community which has no relation to the litigation. In cases which touch the affairs of many persons, there is reason for holding the trial in their view and reach rather than in remote parts of the country where they can learn of it by report only." Gulf Oil, 330 U.S. at 508-09. Thales argues that of approximately forty parties, only two are residents of New Jersey. (Def. Br., p. 34.) Moreover, Thales suggests that none of the actions alleged by Plaintiffs actually took place in New Jersey. Id. Plaintiffs do not discuss this fact specifically. The Court finds that this factor weighs in favor of dismissal.

### 3. Local interest in the controversy

In making a partial list of factors to be considered, the Court stated that "[t]here is a local interest in having localized controversies decided at home." Gulf Oil, 330 U.S. at 509. The Court is required to "consider the locus of the alleged culpable conduct, often a disputed issue, and the connection of that conduct to plaintiff's chosen forum." Lacey I, 862 F.2d at 48 (quoting Van Cauwenberghe, 486 U.S. at 528). Here, it is difficult to identify the locus of the alleged culpable conduct because the Plaintiffs argue that Thales designed a defective Pilot's Manual in the United States, which requires access to evidence and witnesses located here in order to prove their claim; while Thales argues that its design was not defective and did not cause Plaintiffs' decedents' injuries, which requires access to evidence and witnesses located in Europe in order to prove its defense. However, the Court is not required to evaluate the substance of each party's arguments at this point in the litigation; rather, the Court should assume that both arguments will be at issue in the trial. Boston Scientific, 380 F. Supp. 2d at 454 (citing Lacey II, 932 F.2d at

11

182).

Spain's interest in this litigation far outweighs the interest of the people of New Jersey. Spain is more interested because the BA aircraft was bound for Spain when it collided with the DHL plane. (Def. Br., p. 1.) Moreover, litigation regarding this accident has already commenced in Spain against BA. Id. at 1-2. While the United States has an interest in ensuring that products produced in this country by domestic companies are safe, New Jersey's interest in these actions is minimal because a substantial portion, if not all, of Thales's conduct relating to liability occurred outside New Jersey. See Piper, 454 U.S. at 260-61 (holding that "the incremental deterrence that would be gained if this trial were held in an American court is likely to be insignificant"). Therefore, the Court finds that this factor weighs in favor of dismissal.

**4. Familiarity with the governing law**

While the application of foreign law alone is an insufficient reason to dismiss a case on forum non conveniens grounds, Lacey I, 862 F.2d at 48, "the district court should nevertheless consider the impact of choice-of-law problems on the forum." Piper, 454 U.S. at 260 n.29.

New Jersey applies the law of the jurisdiction with the "greatest interest in governing the specific issue that arises in the underlying litigation." Gantes v. Kason Corp., 679 A.2d 106 (N.J. 1996).[6] It is not clear from the briefs of the parties what forum's law would apply, but given the interest of the European counties involved in this litigation, it is likely that the law of a jurisdiction other than New Jersey would apply to this case. Russia, Germany, and Spain all have a great interest in protecting their citizens through the resolution of this action. "The uncertainty regarding the application of [foreign] law is itself a factor that weighs in favor of

---

[6]Thales incorrectly relies on the choice-of-law rules of Spain; however, it is the choice-of-law rules of New Jersey that govern this Court's analysis. See Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487 (1941) (holding that in a diversity action, the district court must look to the conflicts regime of the forum state).

12

dismissal."[7] Miller, 380 F. Supp. 2d at 456.  However, because of the uncertainty, the Court will not give great weight to the choice-of-law factor in favor of dismissal.

**E.  Balance of Private and Public Factors**

The Court finds that the balance of the public and private factors weigh in favor of Thales.  While the public interest factors weigh in favor of dismissal, the private interest factors overwhelmingly suggest this result.  Forcing Thales to litigate in this forum would be "oppressi[ve] and vexatio[us] to the defendant out of all proportion with the plaintiff[s'] convenience."  Piper, 454 U.S. at 241.  Therefore, Thales has overcome the deference that this Court must give to Plaintiffs.  As a result, the action will be dismissed.

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss for Forum Non Conveniens [27] will be granted, and Plaintiffs' Complaint will be dismissed, subject to the conditions proposed by counsel.

An appropriate Order will issue this date.


Dated: October 5, 2005                          /S/ Joseph H. Rodriguez
                                                JOSEPH H. RODRIGUEZ, U.S.D.J.

---

[7] As the Court stated in Piper, "[t]he doctrine of forum non conveniens is designed in part to help courts avoid conducting complex exercises in comparative law . . . . [T]he public interest factors point toward dismissal where the court would be required to 'untangle problems in conflict of laws, and in law foreign to itself.'" 454 U.S. at 251.